IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO.: 5:20-cr-7 |
| AMOS TYRONE BRANTLEY, III, | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Amos Brantley's Motion to Suppress. Doc. 185. In that Motion, Defendant argues the Government obtained certain statements in violation of Miranda v. Arizona, 384 U.S. 436, 467 (1966). The Government filed a Response, opposing Defendant's Motion. Doc. 1024. I conducted a hearing on this Motion on September 27, 2021, at which Defendant, Defendant's counsel, Assistant United States Attorney Joseph McCool ("AUSA McCool"), and Task Force Officer Michael Scott Sapp ("TFO Sapp") appeared. In consideration of the entire record, including oral arguments and evidence submitted by the Government at the hearing, I **RECOMMEND** the Court **DENY** Defendant's Motion.[1]

### INTRODUCTION

Defendant has been indicted for conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. § 846, and two counts of distribution of controlled substance (methamphetamine), in violation of 21 U.S.C. § 841(a)(1). Doc. 3-3. Defendant was arrested on January 12, 2021, and taken to the Coffee County Sheriff's Office.

---

[1] The Government provided a CD-ROM to the Court containing Government's Exhibits A through I to the Court. Exhibits A through D and F through I are .pdf files relating to the arrest and interrogation of Defendant. Exhibit E is a video recording of the entire interrogation, which runs from 8:12:23 to 8:26:33. The Exhibits not on the docket are cited as "Government Exhibit."

TFO Sapp and Georgia Bureau of Investigation ("GBI") Supervising Agent Mark Pro interviewed Defendant while at the Coffee County Sheriff's Office. Defendant moves to suppress all evidence obtained during the interview. Doc. 185.

After fully considering the entire record in this matter, I find Defendant TFO Sapp provided Defendant with proper <u>Miranda</u> warnings and Defendant voluntarily, knowingly and intelligently waived those rights by speaking with law enforcement officers. Therefore, I recommend the Court deny Defendant's Motion to Suppress.

### PROPOSED FINDINGS OF FACT[2]

On January 12, 2021, Plaintiff was arrested at 1931 Vivian Avenue in Douglas, Georgia. Gov't Ex. B. Defendant was subsequently interviewed at the Coffee County Sheriff's Office by TFO Sapp and GBI Agent Pro. Gov't Ex. C. When Defendant entered the interview room, the officers, who were already present, introduced themselves to Defendant and provided him a brief summary of their investigation. Gov't Ex. E at 8:12:50 to 8:14:47. The officers did not question Defendant prior to advising him of his <u>Miranda</u> rights.

TFO Sapp read Defendant his <u>Miranda</u> rights, including the right to remain silent (and that any statements could be used against Defendant), the right to stop answering questions at any time, the right to talk with lawyer before answering any questions, the right to have a lawyer present during questioning, and the right to appointed counsel. <u>Id.</u> at 8:15:01 to 8:15:31. As TFO Sapp started to read Defendant his rights, Defendant interrupted TFO Sapp, indicating that he already understood all of his rights. <u>Id.</u> at 8:15:04 to 8:15:06. TFO Sapp explained to

---

[2]   I conducted a hearing on Defendant's Motion on September 27, 2021. During the hearing, portions of the interview video were played, and I reviewed the entire video separately. Gov't Ex. E. TFO Sapp also testified at length about the interview and interrogation at the hearing, and certain documentary exhibits were admitted without objection. The factual recitation here is based on the entire record.

2

Defendant that he needed to finish providing a complete advice of rights, even if Defendant understood those rights.  TFO Sapp then completed advising Defendant of his rights.  <u>Id.</u>  Defendant then signed a form stating he understood the advice of rights.  <u>Id.</u> at 8:15:37; Doc. 1151 at 4.

After being advised of his rights and signing a form stating he understood his rights, Defendant answered questions for about 11 minutes.  Gov't Ex. E at 8:15:38 to 8:26:27.  Throughout the interview, Defendant answered questions logically and appropriately and appeared comfortable.  Defendant did not appear to be under the influence of any substances throughout the interview.  Defendant did not express any discomfort or physical or mental distress at any point during the interview.

## DISCUSSION

Defendant argues his statements were made before he was given any <u>Miranda</u> warning and, thus, his statements to law enforcement were not made knowingly and intelligently or voluntarily.  Doc. 185 at 1–2.  In opposition, the Government argues Defendant was properly advised of his <u>Miranda</u> warnings and voluntarily waived his rights based on the totality of the circumstances.  Doc. 1052 at 18–20.

**I.    Waiver of <u>Miranda</u> Rights**

In <u>Miranda</u>, the United States Supreme Court determined any custodial interrogation of a suspect involves "inherently compelling pressures which work to undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely."  <u>Miranda v. Arizona</u>, 384 U.S. 436, 467 (1966).  Therefore, the Court created a presumption that evidence produced by custodial interrogation is coerced unless a suspect is first informed of his constitutional right to remain silent and the right to have an attorney present during any

questioning.  Id.  The suspect must be informed any statement he makes may be used as evidence against him and he has a right to appointed counsel.  Id. at 444–45.  Without such warnings, the government may not use a statement obtained from a suspect who was in custody at the time he was questioned by the police.  Id.  If the accused invokes his right to remain silent, "the interrogation must cease."  Id. at 474.  If the accused indicates "in any manner" he wishes to consult with an attorney, "the interrogation must cease until an attorney is present."  Id. at 444, 474.  The government bears the burden of showing, by preponderance of the evidence, a defendant's in-custody statements were obtained in compliance with Miranda and were otherwise voluntary.  Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004); Colorado v. Connelly, 479 U.S. 157, 168 (1986); Miranda, 384 U.S. at 475.

In the instant case, it is clear Defendant was advised of each of his Miranda rights.  Prior to questioning Defendant, TFO Sapp informed Defendant of his Miranda rights orally and Defendant executed a form, which included a statement of his Miranda rights and that he read and understood those rights.  Gov't Ex. E at 8:15:01 to 8:15:31; Doc. 1154 at 4.  Consequently, the first question for consideration is whether Defendant validly waived the exercise of those rights.  North Carolina v. Butler, 441 U.S. 369, 374 (1979).

A Miranda waiver must be made knowingly, intelligently, and voluntarily.  Miranda, 384 U.S. at 436, 444, 475.  The Supreme Court has divided the analysis into whether the waiver was (1) voluntary, and (2) made knowingly and intelligently:

> The inquiry has two distinct dimensions.  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979) (citations omitted)); Colorado v. Spring, 479 U.S. 564, 573–74 (1986); Edwards v.

4

Arizona, 451 U.S. 477, 483–84 (1981); United States v. Wright, 300 F. App'x 627, 630 (11th Cir. 2008).  Only if the totality of the circumstances proves both the requisite level of comprehension and an uncoerced choice may a court properly conclude Miranda rights have been waived.  United States v. Ransford, 749 F.3d 914, 935 (11th Cir. 2014).

### A. Voluntariness

In assessing the voluntariness of a Miranda waiver, the specific focus is on whether the police overreached; factors to be considered are "the [accused's] lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep."  United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001); Waldrop v. Jones, 77 F.3d 1308, 1316 (11th Cir. 1996).  However, a suspect's "signing of the waiver form, though not conclusive, is 'usually strong proof' of the voluntariness of the waiver."  Hart v. Att'y Gen. of State of Fla., 323 F.3d 884, 893 (11th Cir. 2003) (citing Blasingame v. Estelle, 604 F.2d 893, 896 (5th Cir. 1979)).  Finally, the Supreme Court has held "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause."  Connelly, 479 U.S. at 167.

The totality of the circumstances demonstrates Defendant fully understood his rights to counsel and to remain silent and voluntarily waived those rights.  Prior to questioning, TFO Sapp orally advised Defendant of his rights.  Defendant confirmed he understood his rights.  Defendant was then provided a waiver form describing his Miranda rights, and he signed the form, which stated he understood his rights and was willing to answer questions without a lawyer present.  Defendant alleges a coercive atmosphere existed based on the seriousness of the charges, but the entire 11-minute interrogation is on video and there is no indication he was

coerced. See Fare, 442 U.S. at 726–27 (defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit . . . The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in Miranda."). In fact, the video of his interrogation shows Defendant sat calmly in a chair while he spoke with TFO Sapp and Agent Pro. Gov't Ex. E. Defendant was questioned soon after his arrest and for less than 15 minutes. Id. The interrogation was not overly repetitive or prolonged.

Defendant's speech during the interview is not confused, irrational, or incoherent; Defendant appears to be alert and aware of what is happening. Id. Moreover, Defendant presented no evidence and made no argument he was under the influence of any substances or otherwise impaired when arrested or during questioning. Similarly, Defendant makes no argument, and there is no indication, that his personal characteristics make him unable to resist pressure. Therefore, based on the totality of the circumstances, the undersigned finds Defendant's waiver of his Miranda rights to be voluntary.

### B.   Knowing and Intelligent

The totality of the circumstances also shows Defendant knowingly and intelligently waived his Miranda rights. Moran, 475 U.S. at 421; Coleman v. Singletary, 30 F.3d 1420, 1426 (11th Cir. 1994). Defendant raises no specific argument on this issue other than asserting his waiver could not be knowing and intelligent because he was not advised of his Miranda rights prior to questioning—but that contention is contradicted by the record.

For a waiver to be knowing and intelligent within the meaning of Miranda, it is only necessary the suspect understand "he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." Id. (quoting Spring, 479 U.S.

at 574). Additionally, courts consider mental health as part of the totality of the circumstances. Miller v. Dugger, 838 F.2d 1530, 1539 (11th Cir. 1988). To do so, a court relies "on the objective indicia of a defendant's mental state[.]"[3] United States v. Sonderup, 639 F.2d 294, 297–98 (5th Cir. 1981).

The record shows TFO Sapp advised Defendant of his Miranda rights and Defendant acknowledged he understood those rights. Gov't Ex. E at 8:15:01 to 8:15:43. Defendant carried on a conversation with his interrogators, answered their questions, and appeared lucid. See id. There is no evidence his waiver was not knowing and intelligent. Rather, the objective indicia show Defendant was sufficiently competent to waive his rights.

In sum, Defendant was properly advised of his Miranda rights and waived those rights, and Defendant's decision to waive his Miranda rights was not the result of intimidation, coercion, or deception. Accordingly, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress and allow the Government to use all information and evidence obtained in said interview as appropriate.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4,

---

[3] The objective indicators of a defendant's mental state "are that Defendant was informed in clear and unequivocal terms of each of his Miranda rights and that Defendant said, or by his conduct indicated, that he understood them and wished to waive them." United States v. Sonderup, 639 F.2d 294, 297–98 (5th Cir. 1981).

977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 13th day of October, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA